**Katharine Edwards, OSB No. 173393**
attorney@kedwards-law.com
**LAW OFFICE OF KATHARINE EDWARDS**
P.O. Box 417
Hillsboro, Oregon 97123
Telephone: (503) 908-3589
Facsimile: (971) 999-0682

Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PENDLETON DIVISION

| | |
|---|---|
| **RAFAEL HERRERA-WELKER**, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | (42 U.S.C. §1983; Negligence) |
| **STATE OF OREGON, OREGON DEPARTMENT OF CORRECTIONS, K. WHITE, CYNTHIA DIETER, GARTH GULICK, PATRICK MANEY, L. GRUENWALD, DAVIS GORDANIER, C. CAMPOS, HAILEY COLEMAN, JAMES KEMPAS,** and **TINA HAZEN,** | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Rafael Herrera-Welker alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Rafael Herrera-Welker brings this action under 42 U.S.C. § 1983

against the named defendants' actions for violation of the Eighth and Fourteenth Amendments

PAGE 1 - **COMPLAINT**

to the United States Constitution by failing to provide proper medical care to Plaintiff, both after he underwent hernia surgery and over the next two years during which he experienced excruciating ongoing and untreated symptoms of hernia. Plaintiff also alleges supplemental state law claims of negligence. Plaintiff seeks declaratory and injunctive relief, an award of compensatory damages in an amount to be determined at trial and an award of reasonable attorney fees and costs under 42 U.S.C. § 1988.

2.      Plaintiff is currently in the custody of Oregon Department of Corrections ("ODOC") at Two Rivers Correctional Institution ("TRCI").

3.      Defendants are individuals who, during the time of Plaintiff's incarceration, have had authority and responsibility for his treatment, safety, and care.

4.      Plaintiff has fully exhausted his available administrative remedies.

5.      Plaintiff seeks equitable relief, compensatory and punitive damages, declaratory and injunctive relief, as well as attorney fees and costs as set forth below.

## JURISDICTION & VENUE

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question jurisdiction, and pursuant to 28 U.S.C. §1343(a)(3) and (4), civil rights jurisdiction.

7.      Venue is in the District of Oregon pursuant to 28 U.S.C. §1391(b) because the claim arose in this Judicial District and all Defendants are employed by ODOC in TRCI, which is located in Umatilla County.

## PARTIES

8.      Plaintiff Herrera-Welker is a Lawful Permanent Resident of the United States. At all times material, Plaintiff was incarcerated in the custody of ODOC and housed at TRCI in Umatilla County, Oregon.

PAGE 2 - **COMPLAINT**

9.      Defendant State of Oregon operates the Oregon Department of Corrections (ODOC) which owns, staffs, and operates TRCI.

10.     Defendant K. White is and was at all relevant times a medical doctor at TRCI. Defendant White is sued in his individual and official capacities.

11.     Defendant Garth Gulick is and was at all relevant times a medical doctor at TRCI. Defendant Gulick is sued in his individual and official capacities.

12.     Defendant Patrick Maney is and was at all relevant times a medical doctor at TRCI. Defendant Maney is sued in his individual and official capacities.

13.     Defendant Cynthia Dieter is and was at all relevant times a medical nurse at TRCI. Defendant Dieter is sued in her individual and official capacities.

14.     Defendant L. Gruenwald is and was at all relevant times a medical nurse at TRCI. Defendant Gruenwald is sued in her individual and official capacities.

15.     Defendant Davis Gordanier is and was at all relevant times a medical nurse at TRCI. Defendant Gordanier is sued in his individual and official capacities.

16.     Defendant C. Campos is and was at all relevant times a medical nurse at TRCI. Defendant Campos is sued in her individual and official capacities.

17.     Defendant Hailey Coleman is and was at all relevant times a medical nurse at TRCI. Defendant Coleman is sued in her individual and official capacities.

18.     Defendant Tina Hazen is and was at all relevant times a medical nurse at TRCI. Defendant Hazen is sued in her individual and official capacities.

19.     Defendant James Kempas is and was at all relevant times a correctional officer at TRCI. Defendant Kempas is sued in his individual and official capacities.

20.     At all times relevant, Defendant's employees and supervisors, as their conduct is alleged herein, were acting within the course and scope of their employment with the Defendant.

21.     All defendants are sued in their individual capacity.

### FACTUAL BACKGROUND

22.     On or about March 13, 2020, Plaintiff underwent outpatient surgery for a hernia located in Plaintiff's abdomen. Plaintiff's hernia had been small but extremely painful, and had been difficult to identify and diagnose.

23.     Plaintiff's surgeon instructed that Plaintiff was to ice the incision site and to refrain from lifting any weight as well as bending, stretching, squatting, twisting, and straining. The surgeon's aftercare instructions also indicated that Plaintiff was to use a pillow to support his legs while lying down.

24.     Upon returning to TRCI from surgery on March 13, 2020, Plaintiff was placed in the Disciplinary Segregation Unit ("DSU") where he remained for approximately 10 days.

25.     When Plaintiff entered DSU, he was assigned to a top bunk despite and in direct contradiction of the surgeon's aftercare instructions to refrain from bending, stretching, squatting, twisting, and straining.

26.     Plaintiff told the assigned CO Doe that he had just had surgery and needed a bottom bunk but CO Doe refused to allow him a bottom bunk assignment.

27.     Plaintiff requested to see medical staff and Defendant Nurse Hazen met with Plaintiff in DSU. Plaintiff explained his limitations per the surgeon and requested that Medical staff have his assigned to a bottom bunk. Nurse Hazen refused.

PAGE 4 - **COMPLAINT**

28.     When Plaintiff entered DSU, he was also required by Defendant CO Kempas to carry his own belongings to his bunk despite and in direct contradiction of the surgeon's aftercare instructions to refrain from lifting and straining. Plaintiff explained his limitations per the surgeon but Defendant Kempas refused to allow Plaintiff to have help with his belongings. Carrying his belongings caused extreme pain.

29.     Plaintiff was denied access to ice for almost all of the 10 days he spent in DSU despite and in direct contradiction of the surgeon's aftercare instructions to ice the surgical site, with the exception of approximately two times when he was allowed ice.

30.     For approximately two days after he returned from surgery, Plaintiff was denied access to pain medication in contradiction of the surgeon's aftercare instructions. Plaintiff experienced excruciating pain while he was denied pain management.

31.     Plaintiff was initially provided with a pillow to support his leg per the surgeon's aftercare instructions when he first returned to TRCI from surgery, but the pillow was confiscated by staff after approximately two days, on or about March 15, 2020 despite Plaintiff's explanation that it was needed for his surgical aftercare.

32.     Plaintiff had to undergo daily bandage changes for which he was required to leave his DSU cell and travel to the onsite Medical clinic. To leave the cell, Plaintiff was required to be handcuffed through the cell door slot, which forced him to squat and bend forward in front of the slot in order to lower his hands to the height of the slot, which was below his hand height. Squatting and bending daily caused significant pain and directly contradicted the surgeon's aftercare instructions but staff refused to make any accommodation to comply with the surgeon's aftercare instructions.

PAGE 5 - **COMPLAINT**

33.     On or about March 23, 2020, Plaintiff left DSU to return to general population. While being transferred from DSU, Plaintiff was forced to carry his own belongings despite and in direct contradiction of the surgeon's aftercare instructions to refrain from lifting and straining. Staff refused to allow Plaintiff to obtain assistance despite his requests. Carrying his belongings caused extreme pain.

34.     Upon returning to general population, Plaintiff was again assigned to a top bunk. Plaintiff attempted to show his printed aftercare instructions to Defendant Kempas to request a bottom bunk but Defendant Kempas refused to allow a bottom bunk and refused to call anyone from Medical to verify Plaintiff's medical need.

35.     On or about March 23, 2020, Plaintiff began feeling lightheaded, sweaty, and ill, with pain and swelling around his surgical site. Plaintiff visited the Medical clinic and the staff noted that he was to rest and refrain from lifting or straining.

36.     Over the course of the next several weeks, Plaintiff's pain and swelling on and around the surgical site increased and a bump began to appear. At times, his incision site was red and drained fluid and pus. Plaintiff made multiple reports of his pain and swelling.

37.     After Plaintiff returned to general population, he was also required to hold a job in the prison as a beverage worker, which required him to squat, bend, twist, and strain, in addition to regularly lifting bags of milk weighing approximately 50 pounds.

38.     On or about June 18, 2020, Plaintiff underwent a scrotal ultrasound after reporting abdominal pain shooting down to his groin but no diagnostic testing of his abdominal area. The scrotal ultrasound did not indicate any scrotal abnormality but Plaintiff continued to experience abdominal pain, which was severe at times.

PAGE 6 - **COMPLAINT**

39.    Plaintiff's symptoms never fully resolved. He continued to report his discomfort over the next 10 months until the pain again increased in severity which became unbearable.

40.    On or around April 21, 2021, Plaintiff reported that the severe pain had returned to a level that was unbearable. Plaintiff reported the pain again on or about May 10, 2021, and again on or May 17, 2021.

41.    On or about June 3, 2021, Defendant White examined Plaintiff and recommended follow-up with the surgeon who had performed the original hernia surgery.

42.    On or about June 9, 2021, Plaintiff finally underwent an abdominal ultrasound, which identified an abdominal bulge. The radiologist recommended a CT scan to assess the area more fully.

43.    Plaintiff continued to have pain which increased in severity, which he reported repeatedly. Plaintiff did not receive adequate pain management.

44.    Despite the June 9th recommendation for a CT scan and Plaintiff's ongoing severe pain, defendants did not take Plaintiff for a CT scan until October 12, 2021, more than four months later.

45.    On or about October 12, 2021, Plaintiff underwent a CT scan which showed that his hernia had re-ruptured from the original site where it had been repaired on March 13, 2020, and an additional hernia had emerged on the other side of Plaintiff's abdomen, as well.

46.    On or about January 2, 2022, Plaintiff finally had a consultation with a surgeon, nearly three months after the CT scan identified the hernias. The surgeon recommended surgery.

PAGE 7 - **COMPLAINT**

47.     Since the January 2 surgical consultation, Plaintiff has suffered extreme pain but has not received adequate pain management.

48.     Plaintiff has inquired repeatedly about whether he will receive surgery but has been met with only vague responses and no confirmation. Plaintiff continues to suffer daily pain and distress but has not received treatment for his hernias.

## COUNT I

### (42 U.S.C. §1983 – Eighth Amendment – Delay and Denial of Essential Medical Care)

### (Against Defendants ODOC, Gulick, White, Maney, Dieter, Gruenwald, Coleman, Campos, Gordanier, Hazen, and Kempas)

49.     Plaintiff realleges all previous paragraphs as if more fully set forth herein.

50.     Plaintiff is entitled to timely and adequate medical care as part of his Constitutionally guaranteed conditions of confinement pursuant to the 8th Amendment to the United States Constitution. Failure to provide timely and adequate medical care is a violation of the 8th Amendment prohibitions against cruel and unusual punishment.

51.     Plaintiff was denied timely, adequate, and proper medical care after his March 13, 2020 surgery when defendants failed to follow his surgical aftercare instructions.

52.     Plaintiff was denied timely, adequate, and proper medical care after his March 13, 2020 surgery when he potentially re-injured his hernia site as a result of not being allowed to follow the surgeon's aftercare instructions, until he was finally assessed with an abdominal ultrasound on June 9, 2021.

53.     Plaintiff was denied timely, adequate, and proper medical care after his June 9, 2021 ultrasound when defendants failed to provide the recommended CT scan to properly diagnose his hernia(s) for more than four months.

PAGE 8 - **COMPLAINT**

54.     Plaintiff was denied timely, adequate, and proper medical care after his October 12, 2021 CT scan which identified a re-ruptured hernia and additional new hernia, when defendants failed to schedule a consultation with a surgeon for treatment for nearly three months and have neglected to provide surgery to treat Plaintiff's hernia.

55.     Plaintiff has been further denied timely, adequate, and proper medical care since his March 13, 2020 hernia surgery as defendants have repeatedly denied adequate pain management.

56.     The individually named defendants acted with deliberate indifference to Plaintiff's constitutional rights. As a result of defendants' conduct, Plaintiff suffered economic harm, physical pain, injuries, and emotional distress.

57.     Plaintiff is entitled to damages to compensate him for these injuries.

58.     Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

59.     Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II

### (Negligence)

### (Against ODOC)

60.     Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

61.     Defendants knew or should have known that Plaintiff's hernia surgery required adherence to the surgeon's aftercare instructions, that failure to adhere to aftercare instructions would cause pain and risk of re-injury, and that Plaintiff's condition needed to be documented in the DOC computer record system.

62.     Defendants knew or should have known that Plaintiff's history of a prior hernia meant that his ongoing pain was a sign of re-injury, and that failure to schedule Plaintiff for timely and proper diagnostics, follow-up, and needed surgery would cause pain, suffering, and risk of additional damage.

63.     Plaintiff has suffered physical harm and severe physical and mental pain and suffering.

64.     ODOC failed to use reasonable care in documenting Plaintiff's condition and surgical aftercare needs to ensure adherence by all staff. ODOC's conduct was negligent.

65.     Defendant ODOC owes Plaintiff a higher standard of care because of the nature of incarceration. As wards of the State, Defendant ODOC manages all aspects of Plaintiff's daily life and decides with whom she will interact, where he will work, live, sleep, bathe, use the toilet, recreate, etc. Had Plaintiff been a free person, he would have been able to follow his surgeon's aftercare instructions and seek out timely medical care but defendant ODOC prevented Plaintiff from being able to take these measures.

66.     Defendant ODOC voluntarily took the custody of Plaintiff under circumstances such as to deprive him of normal opportunities for protection and created a non-delegable duty to ensure that Plaintiff was provided necessary and timely medical care, including adherence to surgical aftercare, pain management, and timely diagnostics, follow-up, and treatment. Defendants have repeatedly failed to meet their obligation to protect Plaintiff from known, obvious, and predictable risk of re-injury, ongoing pain and suffering, and additional damage from lack of treatment.

67.     ODOC's conduct was and is unreasonable in light of the risk of harm to Plaintiff. ODOC controlled all aspects of Plaintiff's life. Plaintiff's harms could have easily

PAGE 10 - **COMPLAINT**

been prevented if defendants properly documented Plaintiff's surgical aftercare needs and

ensured adherence, and if defendants provided timely and proper access to outside medical

diagnostics and treatment. This was unreasonable.

68.     As a direct and proximate result of ODOC's negligence, Plaintiff suffered

economic harm, physical pain, injuries, and emotional distress. Plaintiff should be fully and

fairly compensated for his damages in a sum that is just as determined by a jury.

69.     Plaintiff satisfied the Oregon Tort Claims Act notice requirement by filing a

Tort Claim notice in August 2020.

70.     Plaintiff is entitled to a prevailing party fee, his costs and disbursements.

### PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendants:

**A.**     A sum which will fully compensate Plaintiff for his physical pain and suffering;

**B.**     A sum which will compensate plaintiff for his emotional distress;

**C.**     A sum which will fully compensate plaintiff for his economic losses;

**D.**     An award of punitive damages;

**E.**     For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

**F.**     Equitable relief; and

**G.**     For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: March 12, 2022

LAW OFFICE OF KATHARINE EDWARDS

s/ Katharine Edwards
Katharine Edwards, OSB No. 173393
attorney@kedwards-law.com
Of Attorneys for Plaintiff

PAGE 11 - **COMPLAINT**