IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **RAFAEL HERRERA-WELKER,** | Civ. No. 2:22-cv-00401-CL |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| **GARTH GULICK,** | |
| Defendant. | |

**CLARKE**, Magistrate Judge.

Rafael Herrera-Welker ("Plaintiff") brings this action against Garth Gulick, a medical provider at Two Rivers Correctional Institution ("Defendant"). Defendant moves for summary judgment on Plaintiff's Eighth Amendment medical deliberate indifference claim on the merits and on the grounds of qualified immunity. For the reasons below, the Court recommends Defendant's motion for summary judgment (ECF #42) be GRANTED.

**LEGAL STANDARD**

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The

Findings and Recommendation – Page 1

moving party has the initial burden of showing that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). The court cannot weigh the evidence or determine the truth; it may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## BACKGROUND[1]

Plaintiff entered ODOC custody on or around June 6, 2016. From early on in his confinement, Plaintiff experienced sinus/nasal congestion. Pl.'s Dep. 30:9-23. Plaintiff received a March 28, 2019, sinus x-ray showing "normally aerated sinuses." Lentz Decl., Ex. A at 4, 5.[2] Despite the normal x-ray result, Plaintiff continued to complain of congestion at appointments (*see, e.g.*, Lentz Decl., Ex. A at 2-3) and in health services communication forms (or 'kytes')

---

[1] Facts in this section are as alleged in the Second Amended Complaint (ECF #30) ("SAC") and as presented in the record, including depositions and declarations submitted by the parties.
[2] Krystan Lentz provided a declaration in support of Defendants' Motion (ECF #46). Lentz is a Registered Nurse, and a Custodian of Record for the Oregon Department of Corrections (ODOC). Medical records from Plaintiff's time at TRCI are attached to the Lentz declaration as Exhibit A.

Findings and Recommendation – Page 2

through September 2019. Lentz Decl., Ex. A at 10-15, 73. After September 19, 2019, however, all recorded mention of congestion ceased until May 2021. *See* Lentz Decl. ¶ 10; Lentz Decl., Ex. A at 15, 50-51.

On November 19, 2019, an ultrasound identified a small right-side inguinal hernia. Lentz Decl., Ex. A at 16, 17. Plaintiff underwent a corrective hernia surgery in March 2020. Lentz Decl., Ex. A at 19-29; Pl.'s Dep. 18:10-19.

For post-operative care, Plaintiff asserts that the surgeon instructed that Plaintiff was to ice the incision site and to refrain from lifting any weight as well as bending, stretching, squatting, twisting, and straining. The surgeon's aftercare instructions also indicated that Plaintiff was to use a pillow to support his legs while lying down. Plaintiff claims that he was not afforded any accommodations to ensure that the surgeon's instructions were followed. He also asserts that he was not given any pain medication for the two days following surgery, causing him to experience extreme post-operative pain. Finally, Plaintiff's SAC details Plaintiff's persistent and ongoing complaints for the following year and half regarding his post-op and hernial pain, eventually leading to a second hernia surgery due to the first hernia re-rupturing as well as an additional hernia on the other side of Plaintiff's inguinal area. Plaintiff claims that Dr. Gulick disregarded many of his kytes and complaints and did not take his pain seriously enough or allow him to seek proper medical care quickly enough to prevent the second surgery. Plaintiff does not provide specific citations to the record to assert many of these claims, but relies on the allegations of the SAC and broad citations to Plaintiff's deposition in general.

The Defendant submits the following evidence. First, a follow up examination with Plaintiff's hernia surgeon in May 2020 identified a "flat healed" wound reflective of a "good recovery post herniorrhaphy." Lentz Decl., Ex. A at 30-31. Although Plaintiff mentioned "some

mild aching around the incision" during this appointment, the surgeon felt Plaintiff needed no restrictions on his activity. Lentz Decl., Ex. A at 30. Plaintiff continued to report pain at the incision site in May and June 2020. Lentz Decl., Ex. A at 32. On June 10, 2020, an examining medical provider ordered a follow-up ultrasound based on Plaintiff continued reports of pain. *See* Lentz Decl., Ex. A at 32. The June 18, 2020 ultrasound was unremarkable for hernia or other mechanism capable of explaining his report of pain. Lentz Decl., Ex. A at 34. There are no progress notes reflecting encounters with any TRCI providers between July and October 2020.

In late September 2020, Plaintiff sent TRCI health services a kyte addressed to "Ms. Sundstrom," requesting to be seen for continuing inguinal pain at his surgical site. Lentz Decl., Ex. A at 37. The following week, on October 1, 2020, Plaintiff met with Dr. Gulick in clinic. Lentz Decl., Ex. A at 38; Decl. G. Gulick ¶4; *see also* Van Loh Decl., Ex. B [Gulick Dep.] 55:8-56:18, 58:8-11. At the time, Dr. Gulick—then serving as Chief Medical Officer for Snake River Correctional Institution—was helping TRIC to meet capacity by seeing TRCI patients several days a month. *See* Gulick Dep. at 41:2-42:18; Gulick Decl. ¶3.

During the October 1, 2020 appointment, Dr. Gulick recorded Plaintiff's complaints of continuing right-side inguinal hernia pain as well as dandruff. Lentz Decl., Ex. A at 38; Gulick Decl. ¶5; Gulick Dep. 55:8-56:18; *see also* Gulick Dep. 52:6-19. Plaintiff reported pain in the region of his March hernia operation as well as right scrotum pain, but noted it was stable and rated it three out of ten. Lentz Decl., Ex. A at 38; Gulick Decl. ¶¶5-6. Dr. Gulick placed Plaintiff on the pain medication nortriptyline. Lentz Decl., Ex. A at 35; Gulick Decl. ¶8. Around October 20, 2020, Plaintiff submitted a kyte complaining that an information sheet provided with the prescribed nortriptyline stated that the medication was used to treat low mood, not pain, and that the "pain remains specifically after my everyday activitys [sic]." Lentz Decl., Ex. A at 42. In

response, nursing staff explained that nortriptyline is used to treat pain and that Plaintiff was on a low dosage, to which Dr. Gulick added that he would increase Plaintiff's dosage. Lentz Decl., Ex. A at 42. Appended to the response was an information sheet Dr. Gulick provided to Plaintiff in explanation of nortriptyline's functionality. See Gulick Decl., Ex. B. After responding to Plaintiff's kyte, Dr. Gulick increased Plaintiff's nortriptyline dosage. Lentz Decl., Ex. A at 41-42; Gulick Decl. ¶9; *see also* Lentz Decl., Ex. A at 43.

Plaintiff sent another kyte to health services in late December 2020, stating that he had stopped taking nortriptyline due to side effects. Lentz Decl., Ex. A at 44. In the same kyte, Plaintiff requested renewal of his naproxen prescription. Lentz Decl., Ex. A at 44. The response prepared by a registered nurse explained that some of Plaintiff's symptoms could be caused by abruptly discontinuing his use of nortriptyline. Lentz Decl., Ex. A at 44. Dr. Gulick added to the response an order for labs and a prescription for naproxen. Lentz Decl., Ex. A at 44. On or around January 7, 2021, Dr. Gulick's orders for labs and naproxen were placed and Plaintiff's nortriptyline prescription was discontinued. Lentz Decl., Ex. A at 45.

In April and May 2021, Plaintiff again reported inguinal pain at his appointments. Lentz Decl., Ex. A at 46-49. These encounters were generally with nursing staff. Lentz Decl., Ex. A at 46-49. Another TRCI provider—Dr. K. White—examined Plaintiff on June 3, 2021. Lentz Decl., Ex. A at 47. The progress note for this visit states that after Plaintiff began weightlifting, his inguinal pain at the site of his old incision increased, becoming constant. Lentz Decl., Ex. A at 46-47. Plaintiff and Dr. White also discussed Plaintiff's sinus issues, which were noted to occur at night. Lentz Decl., Ex. A at 47. Based on their visit and Plaintiff's complaints of pain, Dr. White referred Plaintiff for a consult with his hernia surgeon. Lentz Decl., Ex. A at 47, 53.

The Therapeutic Level Care (TLC) Committee reviewed Dr. White's request and instructed him to order a second ultrasound before sending Plaintiff to his surgeon. Lentz Decl., Ex. A at 53.

Plaintiff received the requested ultrasound of his right inguinal region on June 9, 2021. Lentz Decl., Ex. A at 54. The ultrasound was inconclusive, and a CT scan was recommended as follow up. Lentz Decl., Ex. A at 54, 57. The contemplated CT was ordered by Nurse Practitioner P. Maney and performed on October 21, 2021. Lentz Decl., Ex. A at 57-58. The CT scan revealed multiple small inguinal hernias bilaterally, but greater on the right side. Lentz Decl., Ex. A at 58. While Plaintiff was awaiting surgery for his recently diagnosed hernias, he received a second sinus x-ray on March 3, 2022. Lentz Decl., Ex. A at 60; *see also* Lentz Decl., Ex. A at 59.) The x-ray result was unremarkable, showing normal aeration and an apparently midline septum. Lentz Decl., Ex. A at 60. Plaintiff received these results shortly before his April 25, 2022 laparoscopic inguinal hernia repair. Lentz Decl., Ex. A at 60-72.

## DISUCSSION

Plaintiff brings claims against Defendant Dr. Gulick under section 1983 for a violation of his Eighth Amendment rights, for delay and denial of essential medical care. Defendant moves for summary judgment, claiming that he is entitled to qualified immunity and that no constitutional violation occurred. The Court agrees that Defendant is entitled to summary judgment because the undisputed facts in the record do not establish a constitutional violation.

Qualified immunity shields government officials from Section 1983 liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation, and (2) whether the right at issue was

clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201, (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier's* requirement that qualified immunity analysis proceeds in a particular sequence). The right must have been clearly established at the time of the defendant's alleged misconduct, so that reasonable official would have understood that what he or she was doing under the circumstances violated that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

Courts have discretion in deciding which qualified immunity prong to address first, depending on the circumstances of the case. *Pearson*, 555 U.S. at 242-43. Here, the Court addresses the constitutional violation prong first and finds that the facts as submitted in the record do not support a constitutional violation regarding the treatment of Plaintiff's sinuses and the treatment of his hernia. Defendant's motion for summary judgment should be granted.

I. **The facts in the record do not establish a potential claim for Eighth Amendment medical deliberate indifference.**

To establish an Eighth Amendment claim arising out of inadequate medical care, an inmate plaintiff must prove "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But deliberate indifference is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). In the Ninth Circuit, deliberate indifference is shown by satisfying a two-part test. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, a plaintiff must satisfy an objective standard, showing that the untreated medical need that he suffered "was serious enough to constitute cruel and unusual punishment." *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012). Second, the plaintiff must show that the defendant acted with deliberate indifference, which is a "sufficiently culpable state of mind" amounting to

more than mere negligence but less than conduct undertaken for the very purpose of causing harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff claims medical deliberate indifference based on the treatment of his sinus issue and his hernia issue. As discussed below, Plaintiff cannot show that his sinus condition was serious enough to constitute cruel and unusual punishment, thus he fails to satisfy the first part of the test. As to his hernia issue, Plaintiff fails to satisfy the second part of the test, showing deliberate indifference on the part of Dr. Gulick. Dr. Gulick is therefore entitled to summary judgment as to both issues.

### a. Plaintiff's medical need for sinus treatment was not objectively serious and severe enough to constitute cruel and unusual punishment.

An objectively serious medical need is "not the type of routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (cleaned up). "Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)).

Here, Plaintiff complained to medical staff about his congestion, and medical staff ordered imaging of Plaintiff's sinuses. The March 1, 2022, x-ray report expressly states that Plaintiff's "bony nasal septum appears midline." Lentz Decl., Ex. A at 51. Medical staff at TRCI also refilled his prescriptions for nasal spray and other treatments. While Plaintiff continued to complain of nighttime congestion, there is no evidence that this congestion constitutes a severe medical need such that it constitutes cruel and unusual punishment. Defendant moves for

Findings and Recommendation – Page 8

summary judgment on this issue, and Plaintiff makes no cognizable argument regarding the severity of this condition in response to that motion.[3] Defendant's motion should be granted.

### b. Plaintiff fails to raise a question of fact regarding whether Dr. Gulick acted with deliberate indifference to Plaintiff's hernia issues.

Defendant does not dispute that Plaintiff's hernia issues were a severe medical need; he moves for summary judgment on the second prong, deliberate indifference. This second prong is satisfied by showing: (a) a purposeful act or failure to respond to an inmate's pain or medical need; and (b) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberately ignoring a prisoner's pain supports the subjective component of the analysis. *McGuckin*, 974 F.2d at 1060.

Here, there is no evidence that Dr. Gulick took any actions, or failed to take any necessary actions, that intentionally disregarded Plaintiff's pain or medical needs. The record shows that Plaintiff continuously requested care and treatment of his hernia and inguinal pain, but it also shows that Dr. Gulick acted to prescribe pain medication, and to adjust that medication when necessary. Dr. Gulick noted that Plaintiff's post-op exam with his surgeon indicated that he was healing well from surgery and did not need any restrictions. He also noted that Plaintiff's scrotal ultrasound was negative for indicia of right-side inguinal herniation. There were reasonable considerations of the objective medical record for Dr. Gulick to take into account before taking further treatment actions. Eventually, an ultrasound for Plaintiff's abdomen and pelvis was ordered, and later a CT scan. The Court agrees that the delay in completing the CT scan and second hernia surgery was unfortunate and likely painful, but there is no evidence that

---

[3] There is also no evidence that Dr. Gulick, or any other staff, acted with deliberate indifference to this issue, but instead the record shows that staff responded to Plaintiff's complaints in a reasonable way. Because Plaintiff fails to show a question of material fact as to the first prong, however, the Court need not reach the second.

Findings and Recommendation – Page 9

the scheduling of these appointments was deliberately delayed by Dr. Gulick, nor that he had anything to do with them. Indeed, Dr. Gulick was no longer a provider at TRCI after September 2021, and he was no longer treating Plaintiff when these appointments were being scheduled. Deiter Decl., Ex. A.

In response to the Defendant's motion, Plaintiff points to the fact that Dr. Gulick only remembers one or two visits with Plaintiff, but Plaintiff remembers at least three encounters with Dr. Gulick. This fact, if true, is not material to the issue of Dr. Gulick's alleged deliberate indifference. Even if the Court assumes that Plaintiff's version of the facts is correct, Plaintiff's allegations do not rise to the level of a purposeful act or failure to respond to his pain or medical need. For these reasons, Plaintiff fails to carry his burden on summary judgment as to Dr. Gulick's deliberate indifference of Plaintiff's hernia issues.

## II.   Conclusion

The facts as submitted in the record do not support a constitutional violation regarding the treatment of Plaintiff's sinuses and the treatment of his hernias. Therefore, Defendant is entitled to summary judgment on both the merits of the claim for an Eighth Amendment violation under section 1983 and as part of the constitutional violation prong of the qualified immunity analysis.

## RECOMMENDATION

For the reasons above, Defendant's motion for summary judgment (ECF #42), should be GRANTED. Judgment should be entered for Defendant.

This Findings and Recommendation will be referred to a district judge. Objections to this Findings and Recommendation, if any, are due fourteen (14) days from today's date. If objections are filed, any response is due fourteen (14) days from the date of the objections. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified

Findings and Recommendation – Page 10

time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

DATED this \_\_1\_\_ day of October, 2025.

                                        MARK D. CLARKE
                                      United States Magistrate Judge